UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 06-10041-RWZ

UNITED STATES OF AMERICA

v.

JORGE AFONSO

ORDER ON PRETRIAL MOTION

September 26, 2006

ZOBEL, D.J.

Defendant, Jorge Afonso, stands accused on one count of possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He has moved to suppress evidence resulting from a Boston Police stop and search on November 1, 2005. The court held an evidentiary hearing in which the parties argued their respective positions further on September 19, 2006.

I.  Facts

On the evening of November 1, 2005, three plainclothes Boston Police Officers belonging to the Youth Violence Strike Force were patrolling the Bowdoin Street area in the Dorchester section of Boston in an unmarked patrol car. Martin O'Malley is a Boston Police Officer and a member of the Youth Violence Strike Force ("Strike Force") and was one of the officers in the car that evening. He testified that gang activity was common in the area and at least five shootings had been reported in the neighborhood in the week prior to defendant's arrest that night. The patrol car was an unmarked

black Ford Crown Victoria, the same model used both by the Strike Force and by the Anti-Crime Task Force, which also patrolled the neighborhood.  The Boston Police Department used Ford Crown Victorias as marked police cars for their uniformed police officers patrols as well.  The three officers were dressed in plain clothes, but had their badges hung around their necks, their guns, ammunition magazines and handcuffs on their belts and they carried police radios.  Officer O'Malley testified that, while only their radios were visible to an observer outside their car, people in the area generally recognized the black Crown Victoria as a police car, and that children in the neighborhood pointed them out and called them "D-Boys," which, he explained, means plainclothes police officers.  The unmarked car used by the officers on November 1, 2005, had a small plaque stating "POLICE INTERCEPTOR" on the left rear trunk area.[1]  (Gov. Ex. 2.)  Officer O'Malley explained that the Boston Police use special "soft cars" - not unmarked Crown Victorias - for undercover work, when they did not wish to be recognized as police.

At approximately 8:23 p.m., the officers turned their car onto Fifield Street and noticed a black Honda with three people inside and its lights off parked on the left, in front of 6 Fifield Street.  Because shots had been fired at 6 Fifield Street only one day earlier, the officers slowed down to investigate as they drove by the parked car.  As the

---

[1] The plaque appears to be the manufacturer's designation to identify its Crown Victoria Police Interceptor model marketed to police departments.  See Ford Fleet Police Vehicles, https://www.fleet.ford.com/showroom/specialty_vehicles/Police.asp (last visited Sept. 21, 2006).  While there is no evidence that defendant saw this plaque on the evening of November 1, it does provide some support Officer O'Malley's belief that it was common knowledge in the neighborhood that the black Crown Victorias were unmarked police cars.

police officers' car slowly approached the Honda, they saw a person, later identified as Jorge Afonso, get out of the rear of the car and run along the side of the house away from Fifield Street.[2]  Officer O'Malley and another officer, Chris Bailey, quickly got out of the patrol car and pursued Afonso on foot.  Officer O'Malley observed the man holding his right hip as he sprinted beside the house in a way that suggested the man was carrying a firearm.  Officer O'Malley radioed for help and a uniformed officer, Gerald Cahill, arrived from the opposite direction and discovered Afonso caught up on a fence hidden in a hedge.  When Officer O'Malley arrived at the hedge, he recognized Afonso, both because he had seen him in the neighborhood almost every day, and because he had arrested him about a year earlier for assault and battery on a police officer, resisting arrest and disturbing the peace.  As Officer Bailey and Officer Cahill reached Afonso, Officer O'Malley told Cahill to frisk him because he believed defendant had a gun from the way he had been holding his hip.  While Officer Bailey held Afonso, Officer Cahill conducted a pat frisk which resulted in the discovery of a loaded .38 revolver.

II.     Motion to Suppress (#20)

Defendant now moves to suppress all evidence on the basis that the officers had neither reasonable suspicion nor probable cause to stop him.  The government argues that the totality of circumstances leading up to the arrest sufficiently established

---

[2] There is conflicting evidence as to whether the officers merely slowed down or actually stopped their car and began to back up in front of 6 Fifield Street at the time Afonso exited the parked Honda.  For the purposes of my ruling, this discrepancy is irrelevant.

probable cause for defendant's arrest and, at a minimum, demonstrated reasonable suspicion for a brief, investigative stop.  See Terry v. Ohio, 392 U.S. 1 (1968).

"An officer may conduct a brief investigatory stop when he or she has a reasonable, articulable suspicion that criminal activity is afoot."  United States v. McKoy, 428 F.3d 38, 39 (1st Cir. 2005) (citing Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004)).  Defendant's claim that the officers "clearly had no Fourth Amendment justification for conducting a Terry stop of the vehicle in which Mr. Afonso and his companions were seated" is a red herring.  ([Def.'s] Prelim. Mem. of Law in Supp. of Mot. to Suppress Fruits of Illegal Search and Seizure 2.)  Merely approaching the car that defendant was sitting in to investigate who was in the car or what was going on does not trigger the protections of the Fourth Amendment.  United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997).  A Terry stop requires detention of an individual while a police officer confirms or dispels his or her suspicion of criminal activity.  Id.  Here, Afonso was not detained until Officer Bailey restrained him while Officer Cahill patted him down behind 6 Fifield Street.  The relevant question is, at that time did the officers have a reasonable, articulable suspicion that Afonso was involved in criminal activity to justify the stop.

Flight from police combined with other observations by a police officer may support a reasonable suspicion for detention under Terry.  United States v. Scott, 270 F.3d 30, 41 (1st Cir. 2001).  In United States v. Wardlow, 528 U.S. 119, 124 (2000), the Court found an individual's presence in an area of heavy narcotics trafficking, along

with his unprovoked flight upon noticing the police, justified police suspicion he was involved in criminal activity and detaining him to investigate further. Here, Afonso similarly fled from the police in an area known by the officers for having a high level of gang activity. The neighborhood had suffered multiple shootings as recently as the past week. In addition, Officer O'Malley was aware that the car Afonso was sitting in prior to fleeing was parked, with the lights off, at the exact same location as a shooting the previous day. As O'Malley chased Afonso, he observed him hold his hip in a way he testified was consistent with possessing a firearm and which he had seen at least ten times previously. Finally, once O'Malley caught up with Afonso, he recognized him as an individual he had previously arrested. I accept Officer O'Malley's testimony not only because it is uncontroverted, but also because I find the witness to be credible.

This is more than adequate to justify temporary detention of defendant to see if he was involved in any criminal activity. See United States v. Scott, 270 F.3d 30, 41 (1st Cir. 2001) (noting that additional knowledge, beyond flight and the suspect's presence in an area known for crime, provided the police with "more than was necessary to justify temporary det[ention]") (emphasis added).

Defendant argues that the facts do not support reliance on Wardlow because Afonso might not have been fleeing from the police. He points out that the police car was unmarked, the officer's badges and guns were not visible to Afonso, that the neighborhood was dangerous, particularly to young men like the defendant. A large black car slowing down was threatening enough that running away was a natural reaction. Thus, the conclusion by the police officers that Afonso had recognized them

and was fleeing from the police was unreasonable and could not justify his temporary detention.³  This argument is without merit.

"The reasonableness of a search entails an objective inquiry into the search from the perspective of the searching officers, ... so what is relevant is not whether [defendant] actually perceived the officers as police officers, but whether the officers reacted reasonably on seeing him flee." United States v. Aitoro, 446 F.3d 246, 253 (1st Cir. 2006).  Officer O'Malley testified that children in the neighborhood less than ten years old recognized them as police officers and called them "D-Boys."  Numerous unmarked Crown Victorias from both the Strike Force and the Anti-Crime Task Force frequently patrolled the area.  In addition, at least the particular car the officers used that night was labeled as a "police interceptor" and the car they were in was the same make and model as those used by uniformed Boston police officers.  It was reasonable for O'Malley to believe that residents of the neighborhood knew that a black, unadorned Crown Victoria was likely to be a police car.  Defendant's counsel noted this point when he asked Officer O'Malley if it wasn't that true that some criminals drive Crown Victorias and pull people over pretending to be police officers.  I find that it was entirely reasonable for the officers to have believed that they had been recognized and

---

³ Even if Officer O'Malley's belief that defendant was fleeing from the police was unreasonable, which I do not believe it was, knowledge that 6 Fifield Street was the site of a shooting one day previous, the fact that three individuals were sitting in a parked car at that location with the lights off at night, and the way in which Afonso held his side as he ran, alone might have justified an experienced police officer in detaining defendant for further investigation.  See United States v. Woodrum, 202 F.3d 1, 7 (1st Cir. 2000) (noting that [d]eference is due to the experienced perceptions of the officers).

to have inferred that Afonso was fleeing the police.[4]

Even if the Terry stop was justified, defendant argues, the pat down frisk which found the gun was not. "It is insufficient that the stop itself is valid; there must be a separate analysis of whether the standard for pat-frisks has been met." McKoy, 428 F.3d at 39. The officer must have a particularized, objective basis for his or her belief that the suspect is armed and dangerous. Id. In Aitoro, a "bulge that the officer observed in [the defendant's] waistband, when viewed in light of the other details surrounding the encounter, i.e., [his] flight from the police and the fact that the neighborhood was known for a high incidence of crime permitted a reasonable inference that appellant was armed and dangerous." 446 F.3d at 253 (quoting United States v. Procter, 148 F.3d 39, 42 (1st Cir. 1998)) (internal quotation marks and hyphens removed).

Here, Officer O'Malley testified that he had been a Boston Patrol Officer for eight years and as a member of the Youth Violence Strike Force he had gathered intelligence on "lots of people" in the area. He recognized that the way Afonso held his hip while running was consistent with his having a gun, noting that he had seen that behavior at least ten times previously. Again, I credit Officer O'Malley's testimony. When viewed in light of Afonso's flight from the police, the incidence of shootings in the neighborhood and the recent shooting at the same address, I find the detaining officers had a reasonable, articulable suspicion that defendant had a concealed weapon, which

---

[4] See also United States v. Edmonds, 240 F.3d 55, 62 (D.C. Cir.2001) (noting the district court's finding "that [a police officer] was aware that his [unmarked black] Crown Victoria was readily recognizable as a police vehicle").

justified frisking him.

       Defendant's motion to suppress (Docket #20) is denied.

  <u>September 26, 2006</u>               <u>/s/Rya W. Zobel</u>
       DATE                          RYA W. ZOBEL
                                  UNITED STATES DISTRICT JUDGE